TENNECO OIL COMPANY, Operator of the North Tatums Goodwin Sand Unit, Norville Oil Company, Rocket Oil Company, Cox-Alspaugh, David Beach, Kirkpatrick Oil Company, Teneco Oil Company, H. L. Gentry, Manly B. Brown, Jene Harper, Phillips Petroleum Co. and Kerr-McGee Corporation, Petitioners,

v.

The DISTRICT COURT OF the TWENTIETH JUDICIAL DISTRICT sitting in Ardmore, CARTER COUNTY, Oklahoma, and James H. Dillard, Judge of said court, Respondents.

No. 43910.

Supreme Court of Oklahoma.

Feb. 3, 1970.

Fischl, Culp & McMillin, Ardmore, for petitioners.

Ritter & McGuire, Ardmore, for respondents.

HODGES, Justice.

Petitioners seek in this original action a writ of prohibition against the respondent judge prohibiting him from exercising jurisdiction in a partition suit and for dissolution of a temporary injunction. The issue involved is the right of the trial court to partition oil and gas leases that have been previously unitized under an order of the Corporation Commission. We find the writ of prohibition should be granted.

In 1967, certain lease owners, including State Oil Company, hereinafter referred to as plaintiff, agreed to unitize their oil and gas leases. They submitted a Plan of Unitization to the Corporation Commission. The commission entered an order approving the Plan of Unitization and the North Tatums Goodwin Sand Unit was created. Tenneco Oil Company, one of the petitioners herein, was named operator of the Unit.

After approximately three years of operation, plaintiff filed an action in the district court of Carter County for partition of the oil and gas leases within the Unit. Subsequently, the trial court entered an order temporarily enjoining and restraining the operator of the Unit, Tenneco Oil Company, from engaging in an expansion

of secondary recovery within the Unit until further order of the court. The petitioners have asked us to dissolve this injunction and to grant a writ prohibiting the trial court from exercising further jurisdiction in the partition suit.

Petitioners allege that plaintiff's partition suit is a collateral attack upon an order of the Corporation Commission. They contend that under our statutes no court, except the Supreme Court, and it only on appeal, has jurisdiction to review, reverse, annul, modify or correct any order of the commission or to enjoin or restrain its execution or operation.

Plaintiff, on the other hand, contends the partition suit does not interfere with the operation of the Unit, nor does it attempt to disturb the jurisdiction of the Corporation Commission in fixing correlative rights of the unitized leaseholders. They insist that when partition is allowed by the trial court, it will be partitioned subject to the unitized order of the Commission.

■ A prerequisite for partition is that there must be a cotenancy between the parties. 68 C.J.S. Partition § 1. In Prusa v. Cermak, Okl., 414 P.2d 297, we held in syllabus (1) "Partition of real property may be had only when it is held in cotenancy, either as tenants in common, joint tenants or coparceners." See also, North v. Coffey, 200 Okl. 44, 191 P.2d 220.

The question then to decide is whether the voluntary unitization agreement of the parties, which led to the creation of the Unit by the Corporation Commission and its order of approval, created a cotenancy between the several leaseholders. We find it did not.

In Wakefield v. State, Okl., 306 P.2d 305, a contention was made that an order of the Corporation Commission pooling two mineral estates under a compulsory pooling statute created an "enforced tenancy in common." The court in rejecting this argument cited and quoted from Amis v. Bryan Petroleum Corp., 185 Okl. 206, 90 P.2d 936, where we said:

"The parties cannot successfully assert their common law rights as tenants in common, for such a tenancy actually does not exist."

In Sinclair Crude Oil Co. v. Oklahoma Tax Commission, Okl., 326 P.2d 1051, some of the parties to a voluntary communization agreement were Cherokee allotees whose allotments were exempt from taxation. The tax commission assessed a gross production tax against the royalty they were entitled to receive. The assessment was made on the theory that the communitization agreement constituted an exchange of title and ownership to their mineral interest thus losing their tax exempt status as a homestead. The tax exemption was upheld on the basis there was no intent by the parties to transfer title or ownership. The court said the agreement did not contain adequate operative words such as "grant, bargain, convey, or others of like import, sufficient to effect a conveyance of title to the minerals underlying the land", which was necessary for a conveyance or transfer of title and ownership. The court quoted from a text entitled, "Voluntary pooling and Unitization" by Hoffman, with approval which states"

"In the ordinary pooling or unitization agreement, even in the absence of express provisions on the subject, the parties do not actually intend to convey their real property interests to each other but intend only to share the results of the pooled or unitized operation, an end which is much less drastic then the cross-conveyance. The royalty owners in particular will ordinarily expect their act of pooling or unitization to effect a sharing of the production after it is obtained but not to effect cross-conveyances of the oil or gas in place and of the real property interests themselves. Variations in the pooling or unitization arrangements would, of course, have substantial effect upon such analysis of the true intention of the parties. * *"

■ In the present case, co-tenancy has never been established or created. The

parties have title and ownership to separate tracts. No party has been conveyed an interest in the property of the other. The plan of unitization is not a cross conveyance of interest, but rather a plan to unitize their several tracts of land underlying a common source of supply for the purpose of securing the greatest ultimate recovery of oil, the prevention of waste and the protection of correlative rights. Neither the plan of unitization nor the statutes which authorized the Corporation Commission to approve and regulate the same intended to convey an interest between the parties. The Plan of Unitization has no operative words of conveyance and it is apparent from the instrument itself that none was intended. Further, the unitization and pooling statutes show an intent to maintain a separately owned status among the property owners. Title 52 O.S. § 287.9 explicitly declares that there is no vesting or transfer of title in the unit. Section 287.8 states that obligations and liabilities of the lessees are several and not joint or collective. In fact the words "separately-owned" is a frequent descriptive term used throughout the statutes.

Plaintiff cites several cases in support of his position that partition can be allowed in the present case. Thomsen v. Thomsen, 196 Okl. 539, 166 P.2d 417, 164 A.L.R. 1426; Komarek v. Perrine, Okl., 382 P.2d 748; Sweeney v. Bay State Oil and Gas Co., 192 Okl. 28, 133 P.2d 538. The distinguishing factor in each of the cited cases is that there was present a "joint ownership" between the litigating parties. They had acquired an undivided interest in the *same* property. In the present case we have *different* tracts of land that have no common title. There has been no conveyance between the petitioners and plaintiff of any interest or title and the unitization agreement or the order of the Corporation Commission approving the plan and creating the Unit did not as a matter of law establish a co-tenancy between the parties.

There being no co-tenancy present between the parties, plaintiff's action for partition cannot be sustained. This determination makes it unnecessary to pass upon petitioner's contention that the partition action is a collateral attack upon the order of the Corporation Commission.

The application for a writ of prohibition is granted and the temporary injunction is hereby dissolved.

All the Justices concur.