William T. HLADIK and Rose
Hladik, Appellees,

v.

Inez Gose LEE et al.,
Appellants.

No. 47166.

Supreme Court of Oklahoma.

July 1, 1975.

Rehearing Denied Oct. 21, 1975.

Harry C. Evans, Murphy & Evans, Kingfisher, for appellees, William T. Hladik and Rose Hladik.

M. R. Baker, Brown, Verity, Brown & Baker, Oklahoma City, for appellee, Monsanto Co.

C. Harold Thweatt, George S. Guysi, Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, for appellant, Inez Gose Lee.

BERRY, Justice:

An oil and gas lessee, acting pursuant to pooling clauses in several leases, created a 480 acre unit [the "declared unit"] for production of gas. The Corporation Commission subsequently entered order establishing one 160 acre tract within declared unit as a drilling and spacing unit [the "spacing unit"] for production of gas from Red Fork formation. The issue presented herein is whether the spacing unit superseded the declared unit insofar as concerns distribution of royalty upon gas produced from spaced formation through well on spacing unit.

The parties stipulated as to all material facts.

The Hladiks, appellees herein, executed lease covering SW/4 of Section 15, Township 19 North, Range 5 West, Kingfisher County, Oklahoma [the "Hladik Tract"].

Inez Gose Lee, appellant herein, executed lease covering adjoining tract, the N/2 of Section 22 [the "Lee Tract"]. Other parties executed eight leases covering interests in Lee Tract.

Monsanto acquired lessee's interest under all ten leases.

Each lease contains a pooling clause which authorizes lessee to pool leased premises with other lands to form a unit, not exceeding 640 acres, for production of natural gas.

On July 13, 1971, Monsanto executed a Declaration of Pooling which pooled lands covered by the ten leases into 480 acre unit for production of gas. All parties concede Monsanto was acting in good faith and the unit was validly established.

Each lease provides lessor shall receive royalty of 1/8th upon gas produced from leased premises. Each lease also provides that on unit production lessor shall receive only such proportion of royalty stipulated in lease as lessor's acreage in unit bears to total acreage in unit.

On January 28, 1972, the Commission entered its order No. 89015 establishing the Hladik Tract as a 160 acre drilling and spacing unit for production of gas and associated hydrocarbons from Red Fork formation.

The order provides in part:

"That all royalty interest within any spacing unit created herein shall be communitized and each royalty owner within any unit shall participate in the royalty from the well drilled thereon in the relation that the acreage owned by him bears to the total acreage in the unit."

Subsequently, Monsanto commenced the Rose No. 1 well on Hladik Tract, and completed it as a gas well to Red Fork formation.

The Hladiks then filed this action against Monsanto and parties owning mineral interests in Lee Tract. They requested court find owners of mineral interests in Lee Tract were not entitled to share in production from Rose No. 1 well, or other production from Hladik Tract.

The parties stipulated only issue involved in lawsuit is whether the Declaration of Pooling was negated and rendered ineffective by Corporation Commission order No. 89015.

If the spacing unit superseded the declared unit insofar as concerns payment of royalty on production from Red Fork formation, the Hladiks are entitled to royalty of 1/8th upon gas produced from Rose No. 1 well, and lessors of Lee Tract are not

entitled to any royalty upon such production.

If the spacing unit did not supersede the declared unit, the Hladiks are entitled to royalty of ⅓rd [$^{160}\!/_{480}$] of ⅛th upon such production, and lessors of Lee Tract are entitled to royalty of ⅔rds [$^{320}\!/_{480}$] of ⅛th upon such production.

Subsequent to time this action was filed, Monsanto commenced well on Lee Tract and completed it to Red Fork formation as dry hole.

The trial court entered judgment finding "the Declaration of Pooling was negated and rendered ineffective by the order of the Corporation Commission." Appellant Lee appeals.

She first contends each lessor consented to formation of declared unit because each lease contained pooling clause authorizing lessee to establish the unit. She contends lessee's exercise of this power constituted an agreement by lessors to share proportionately in royalty upon production from declared unit.

She contends this agreement was not superseded by the order establishing the spacing unit.

She recognizes well spacing is a valid exercise of police power in interest of conservation, and private contractual rights must yield where in conflict with spacing regulations. *Oklahoma Natural Gas Co. v. Long,* Okl., 406 P.2d 499.

However, she contends state has no interest in how owner of interest in royalty upon production from spacing unit might agree to share his royalty participation. She contends there is no conflict between the agreement, which resulted from lessee's exercise of the pooling power, and the order creating spacing unit. See *Nisbet v. Midwest Oil Corp.,* Okl., 451 P.2d 687.

The Hladiks and other lessors of lands within declared unit could have executed express agreement to share all royalty upon production from declared unit without regard to any subsequent orders of Corporation Commission. However, they did not do so in this case. Each lessor merely executed a separate lease with a pooling clause. Therefore, lessee's authority to pool Hladik Tract with other premises, and rights resulting from exercise of that power, must arise from pooling clause in Hladik lease.

In *Gillham v. Jenkins,* 206 Okl. 440, 244 P.2d 291, we construed pooling clause in an oil and gas lease and stated:

"In the interpretation of a contract the intention of the parties, at the time the contract was made, is a paramount objective, and in arriving at the intent the conditions and circumstances under which the contract was made * * * may be considered."

The Hladik lease permits pooling "* * * when in lessee's judgment it is necessary or advisable to do so in order to properly develop and operate said lease premises so as to promote the conservation of * * * gas * * * in and under and that may be produced from said premises. * * *"

This clearly indicates that at time Hladiks executed their lease they intended to permit their tract to be pooled with other lands when such pooling would promote conservation of gas from their premises.

52 O.S.1971 § 87.1, authorizes the Commission to create drilling and spacing units for purpose of preventing waste and protecting correlative rights.

In *State v. Carter Oil Company of West Virginia,* Okl., 336 P.2d 1086, we considered § 87.1, *supra,* and stated:

"* * * the purpose of the Act was the conservation of the oil and gas with particular attention directed to the protection of private lease contracts and the correlative rights of all parties in interest."

The statute indicates the Commission may exclude lands from the spacing unit on grounds common source of supply does not underlie such lands.

Also, it indicates Commission may limit size of spacing unit on ground one well

will not effectively drain larger tract, and larger drilling and spacing unit might not assure maximum ultimate recovery of minerals. See *Shell Oil Co. v. Davidor & Davidor*, Okl., 315 P.2d 259.

■ The statute does not prohibit Commission from establishing all, or part, of lands included within a declared unit as a drilling and spacing unit.

■ It was in effect at time Hladiks executed the lease. We must presume that at that time parties to lease were aware of Commission's authority to create spacing unit covering part of lands and formation included in declared unit created by lessee. See *Sinclair Oil & Gas Company v. Bishop*, Okl., 441 P.2d 436.

In its order establishing Hladik Tract as spacing unit, Commission found that 160 acre spacing units should be established in interest of securing greatest ultimate recovery of hydrocarbons from lands involved, prevention of waste, and protection of correlative rights. This constituted at least an implied finding that the 480 acre unit no longer served purpose of conservation of gas in Red Fork formation underlying Hladik Tract.

There is nothing in Hladik lease which indicates Hladiks intended to share production from their tract with other lands in declared unit subsequent to time Commission found declared unit no longer served purpose of promoting conservation of gas underlying Hladik Tract.

■ We conclude intent of pooling clause was that any spacing unit established by Corporation Commission would, insofar as it covered same lands and formations, supersede a declared unit created pursuant to pooling clause, at least in circumstances of present case where no production was had from declared unit prior to time order establishing spacing unit was issued.

In support of this holding we note 4 Kuntz, The Law of Oil and Gas, § 48.3, which states at page 214:

"A unit will terminate if it is superseded by another unit that is validly formed. For example, a unit formed by the exercise of the pooling power will terminate if it is superseded by a statutory unit."

In § 48.3(k) the writer further states:

"When a unit created pursuant to statute conflicts with a voluntary unit, the statutory unit will prevail. The rights of the lessors and lessees of land included in the voluntary unit will be governed by their agreement. If the voluntary unit is created by an exercise of the pooling power, a statutory unit subsequently created will supersede the voluntary unit, and if only a part of the voluntary unit is included in the statutory unit, payment of royalty will be made on the basis of acreage included in the statutory unit."

Furthermore, in *Humble Oil and Refining Co. v. Jones*, La.App., 125 So.2d 640 [Remanded to implead all owners of lands included within declared unit but not within compulsory unit, 241 La. 661, 130 So.2d 408; original result affirmed in second appeal, 157 So.2d 110, writ refused, 245 La. 568, 159 So.2d 284] the court considered a similar issue.

The majority opinion found lessee had created unit pursuant to pooling clause in leases and Department of Conservation had subsequently created compulsory unit covering part of same lands and formations.

That court held the compulsory unit superseded the prior declared unit. In so doing the court stated:

"It does not appear to this Court that the lessor could be said to have frozen his royalty interests in the voluntary unit unless he so declared in the lease agreement. The very purpose for which a lessor signs an individual lease contract with his lessee with a pooling agreement therein is for the purpose of getting his equitable and just share of oil and gas in

the pool and to prevent drainage of his land.

\* \* \* \* \* \*

" \* \* \* To adopt plaintiff's position would also allow land owners whose lands are not within an oil or gas reservoir to participate in royalties to which they are not entitled. This would defeat the very purpose for which the Department of Conservation was formed."

Appellant contends the cited case should be distinguished because in Louisiana drilling and spacing units are formed on a geological basis while in Oklahoma several townships may be spaced as a prospective common source of supply before a well has even been drilled.

She further contends that court erred in distinguishing between a contractual unit [one formed by agreement executed by all parties] and a declared unit [one formed by oil and gas lessee pursuant to pooling clause].

In light of our discussion above we conclude the case cannot be distinguished on these grounds.

We do note that trial court's judgment could be construed to mean spacing order superseded declared unit in its entirety. However, spacing unit covers only Red Fork formation, whereas declared unit covers all formations underlying 480 acre tract. We construe trial court's judgment to hold spacing unit superseded declared unit only as concerns Red Fork formation. We express no opinion concerning whether spacing unit superseded declared unit with respect to other formations.

Appellant further argues only statutory notice required as condition to entry of spacing order is notice by publication in Oklahoma County and county where land is located. She contends this raises serious constitutional problems in that vested rights may be terminated without actual notice to parties affected.

She does not contend she had no actual notice of hearing concerning issuance of spacing order involved herein. Therefore,

we conclude this issue is not properly before us.

Appellant also cites examples of inequities which might result from this holding. These examples all involve situations wherein production is obtained from declared unit prior to time spacing unit is created. Such is not the case here and we express no opinion concerning law which might be applicable in those situations.

The judgment of the trial court, as construed herein, is affirmed.

All Justices concur.