**GULFSTREAM PETROLEUM CORPO-RATION, a corporation, Petitioner,**

v.

**Judge Robert A. LAYDEN, District Judge of Pittsburg County, Respondent.**

No. 55809.

Supreme Court of Oklahoma.

May 12, 1981.

Robert A. Miller, Crabtree & Miller, Oklahoma City, for petitioner.

H. B. Watson, Jr., and Richard K. Books, Watson, McKenzie & Moricoli, Oklahoma City, for respondent.

LAVENDER, Justice:

This is an original action in which the petitioner, Gulfstream Petroleum Corporation, asks this court to prohibit the respondent trial judge from further proceeding in the cause before him, a quiet title action filed by Hamilton Brothers Oil Company. The land involved is section 18, township 5 north, range 17 east, Pittsburg County, Oklahoma. Both Gulfstream and Hamilton Brothers own oil and gas leases in the section.

In 1978 Gulfstream filed applications with the Oklahoma Corporation Commission to space and pool certain formations underlying section 18. The applications were heard, recommended, and granted, but for some reason the pooling order was issued two weeks before the spacing order. Later, Gulfstream applied for an extension of time to drill a well. At the hearing on Gulfstream's application Hamilton Brothers, out of time, sought to elect under the pooling order to participate in the well. Gulfstream's application for an extension of time was granted; Hamilton Brothers' election was denied. Gulfstream then drilled a producing well to the Middle Atoka (Red Oak) formation.

Hamilton Brothers has never sought administrative or appellate relief from any of these orders of the Corporation Commission. Instead, in February 1980, some nineteen months after the pooling order was issued, Hamilton Brothers filed this quiet title action. In it they seek, among other things, a determination that the Commission was without jurisdiction to issue the pooling order because there was no spacing order in effect and that the pooling order is void.

Gulfstream now petitions this court to assume original jurisdiction and issue a writ of prohibition, prohibiting the trial court from further proceeding in the cause. They argue that all necessary elements of jurisdiction existed at the time the Commission entered the pooling order. The question of whether a spacing order existed when the pooling order was entered is not, Gulfstream argues, a fact question constituting proof of one of the necessary elements of the Commission's jurisdiction. They conclude that the trial court lacks jurisdiction to entertain such a question, because to do so would be to allow a collateral attack on an order of the Corporation Commission.

We assume original jurisdiction, but decline to issue the writ.

## I.

By statute, collateral attacks on orders of the Corporation Commission are prohibited.[1] Generally, the district courts of this state lack the jurisdiction to even inquire into the validity of these orders.[2] A district court in a collateral proceeding may, however, examine a Corporation Commission order for the limited purpose of determining the jurisdiction of the Commission, or its lack thereof, to issue the order.[3]

The three elements of jurisdiction are (1) jurisdiction over the person, (2) jurisdiction over the subject matter, and (3) jurisdiction to render the particular judgment.[4] There is no problem here with personal jurisdiction or subject-matter jurisdiction. The question is whether the Corporation Commission had jurisdiction to render the particular judgment, the pooling order. That question in turn depends on whether the entry of a spacing order is a jurisdictional prerequisite to the entry of a pooling order. It is commonly thought to be,[5] and we have implied that it is.[6] This court, however, has not been called upon to answer the question directly.

█ The answer to the question is a matter of statutory interpretation. If the statute that creates the authority for the Commission's spacing and pooling orders, 52 O.S.

Supp.1977 § 87.1,[7] makes the entry of a spacing order before a pooling order merely directory, then the requirement is not jurisdictional.[8] If on the other hand the statute makes it mandatory, then the requirement is jurisdictional.[9] Whether a statute is directory only or is mandatory depends, to the extent it can be determined, upon the intent of the legislature. We have held:

> If the lawmakers in providing the method of such steps had in mind only an advisable manner of orderly advancement, and had not in mind the nature of the judgment to be rendered when the course was run, then such statutes are usually regarded as directory, and will be considered only in determining the procedure, and are entitled to no consideration in determining the judicial power of the court to render a judgment. Facts showing compliance with such statutes are clearly quasi jurisdictional only, and not subject to consideration in collateral attack. On the other hand, if it appears that in the enactment of such statute the lawmakers, while providing a step in the procedure, had uppermost in mind the effect of such a step upon the judgment thereafter to be rendered, and intended the taking of such step in the procedure as a condition precedent to the existence of the judicial power of a court to there-

---

1. 52 O.S.1971 § 111 provides in part:
   No collateral attack shall be allowed upon orders, rules and regulations of the Commission . . . .

2. 52 O.S.1971 § 111 continues:
   [T]he sole method of reviewing such orders and inquiring into and determining their validity, justness, reasonableness or correctness shall be by appeal from such orders, rules or regulations to the Supreme Court. . . . No court of this State except the Supreme Court, and it only on appeal, as herein provided, shall have jurisdiction to review, reverse, annul, modify or correct any order, rule, or regulation of the Commission within the general scope of its authority herein or to enjoin, restrain or suspend execution or operation thereof . . . .
   *See also Shell Oil Co. v. Keen,* 355 P.2d 997, 1000 (Okl.1960).

3. *State ex rel. Comm'rs of the Land Office v. Corporation Commission,* 590 P.2d 674, 677 (Okl.1979).

4. *Abraham v. Homer,* 102 Okl. 12, 13, 226 P. 45, 47 (1924).

5. Nesbitt, *A Primer on Forced Pooling of Oil and Gas Interests in Oklahoma,* 50 Okl.B.J. 648, 654–55 (1979); Hart, *Conservation Practice,* in OBA/CLE Institute, Practical Oil and Gas Law 53, 58 (1980). Mr. Hart refers to the existence of a drilling and spacing unit as "[t]he *sine qua non* for pooling interests."

6. *Helmerich & Payne, Inc. v. Corporation Commission,* 532 P.2d 419, 422–23 (Okl.1975); see *Southern Union Production Co. v. Eason Oil Co.,* 540 P.2d 603, 607–08 (Okl.App. 1975).

7. This is the version of section 87.1 that applies to these orders. The statute has been amended many times, and was amended again last year. 1980 Okla.Sess.Laws ch. 33, § 1.

8. *Abraham v. Homer,* 102 Okl. at 14, 226 P. at 47.

9. *Id.*

after render the particular judgment, then such facts, while in a sense being quasi jurisdictional, are clearly jurisdictional facts, necessary to the existence of the third element of jurisdiction. Such statute is a mandatory one.[10]

We believe that the legislature, in providing for pooling orders, had uppermost in mind the effect of a prior spacing order. This is clear from the language of the provision authorizing pooling orders, 52 O.S. Supp.1977 § 87.1(e), which provides:

> When two or more separately owned tracts of land are embraced *within an established spacing unit*, or where there are undivided interests separately owned, or both such separately owned tracts and undivided interests embraced *within such established spacing unit*, the owners thereof may validly pool their interests and develop their lands *as a unit*. Where, however, such owners have not agreed to pool their interests and where one such separate owner has drilled or proposes to drill a well on said unit to the common source of supply, the Commission, to avoid the drilling of unnecessary wells, or to protect correlative rights, shall, upon a proper application therefor and a hearing thereon, require such owners to pool and develop their lands *in the spacing unit as a unit*. [Emphasis added.]

The above language makes a prior spacing order mandatory.

The necessity for a prior spacing order also appears from the statutory scheme. The purpose of the conservation statutes, of which section 87.1 is one, is to prevent waste and protect correlative rights.[11] The correlative rights of royalty interest owners and of working interest owners are treated separately. A pooling order serves to protect the correlative rights of working interest owners, by pooling their interests.[12] A spacing order is necessary and sufficient to satisfy the other conservation purposes.[13] It creates the unit. It directs that only one well be drilled in the unit,[14] within a specific location,[15] and drilling a well at another location or operating a well drilled in violation of the spacing order is prohibited.[16] The spacing order also pools the royalty interests within the unit.[17]

The entry of a spacing order is not a mere procedural step in the process of entering a pooling order. It is, rather, an essential and compulsory requirement. The result of compliance with this requirement—the unit—"inheres in such decree as a material and substantial part of the judgment itself."[18] A pooling order pools working interests *in a unit*; without an established unit there is noting to pool. We therefore hold that a spacing order is a jurisdictional prerequisite to the entry of a pooling order.

■ Having decided that, it is clear that the facts relating to the existence or nonexistence of a spacing order at the time the pooling order was issued are jurisdictional facts.[19] They may be inquired into in a collateral proceeding,[20] and we therefore decline to issue a writ of prohibition against the trial court.

## II.

In defense in the action below, Gulfstream raised several other issues. They

---

10. *Id.* at 15, 226 P. at 48.

11. See, *e. g., State ex rel. Comm'rs of the Land Office v. Carter Oil Co.*, 336 P.2d 1086, 1093 (Okl.1959); *Tenneco Oil Co. v. District Court*, 465 P.2d 468, 470 (Okl.1970); *Hladik v. Lee*, 541 P.2d 196, 198 (Okl.1975).

12. 52 O.S.Supp.1977 § 87.1(e). The statute does recite another purpose, "to avoid the drilling of unnecessary wells."

13. *See* Note, *Oil and Gas: The Necessity of Obtaining a Pooling Order Before Drilling*, 31 Okla.L.Rev. 451, 457 (1978).

14. 52 O.S.Supp.1977 § 87.1(c).

15. *Id.*

16. *Id.* § 87.1(e).

17. *Id.*

18. *Abraham v. Homer*, 102 Okl. at 15, 226 P. at 48.

19. *Id.* at 13–14, 15, 226 P. at 47, 48.

20. *State ex rel. Comm'rs of the Land Office v. Corporation Commission*, 590 P.2d at 677.

were briefed in this original proceeding here, but it has not been necessary for us to address them. Gulfstream can pursue them in the action below. We do, however, have one further observation to make.

It is common for the Corporation Commission to receive simultaneous applications for spacing the pooling orders. Typically they are filed together, heard together, recommended together, and the orders approved and signed together. In such a case it does not matter which order is the first to which the signatures of the Commissioners are affixed. In either case we hold that the jurisdictional prerequisite is satisfied.

In this case we are told that Gulfstream's two applications were filed together, heard together, and recommended together. It was only through a processing error, we are told, that the orders were not presented to the Commissioners for signature together. We consider this processing error to be de minimis and not controlling under the facts of this case. Therefore, if Gulfstream's evidence shows the error to be as described, and if no party is shown to have been prejudiced or had his rights impaired by the delay between the signing of the two orders, then the jurisdictional prerequisite will have been satisfied. We leave the trial of the case to the trial court, but if that turns out to be true the pooling order will have to be found valid.

ORIGINAL JURISDICTION ASSUMED; PETITION FOR WRIT OF PROHIBITION DENIED.

IRWIN, C. J., and WILLIAMS, SIMMS and HARGRAVE, JJ., concur.

BARNES, V. C. J., and HODGES, DOOLIN and OPALA, JJ., dissent.

DOOLIN, Justice, dissenting:

This Court today reverses itself, adopting a rule with which I cannot agree.

1. *Fitzsimmons v. The City of Okla. City, 192 Okl. 248, 135 P.2d 340 (1942).*

2. *Helmerich & Payne, Inc. v. Corporation Commission,* supra, does not deal with jurisdictional requirements per se. It deals with and strikes down regulations and practices of Corporation Commission totally unauthorized and not im-

I can agree with the majority when it recites the elements or prerequisites to jurisdiction,[1] and can agree jurisdiction should be assumed.

The reasons I cannot further concur are two:[2]

1. The opinion of the Court raises and dignifies the paper records of the Corporation Commission to the height of a common law judgment roll. (A complete break with the historic development of administrative bodies).

2. The opinion ignores the time honored doctrine and distinction between true jurisdictional elements and quasi jurisdictional facts.

*Spacing Order is a Quasi Jurisdictional Fact; A Condition Precedent*

In *Abraham v. Homer, 102 Okl. 12, 14, 226 P. 45, 47 (1924),* we held:

"Whenever by a statute which *the court has determined* to be not merely directory but absolutely mandatory the Legislature has required acts to be done, and provides that the Court shall not render a particular judgment without facts showing compliance with such statute, then such facts are jurisdictional to the power of the Court to render that particular judgment." (Emphasis supplied).

\*     \*     \*     \*     \*     \*

"All such facts not constituting proof of the existence of the subject matter, nor of the cause of action, but conditions precedent to the right of the Court to proceed after it has acquired jurisdiction over the subject matter and of the person, are known as quasi jurisdictional facts."

A Court's adjudication of quasi jurisdictional facts does not fall within the prohibition plied within the conservation act. The question in *Helmerich* was the inclusion of spacing units situated in 9 separate non-contiguous sections as a pooling unit, where the common right to drill into a unit (interest or ownership) was not present and where the spacing unit was in excess of 640 acres.

against a collateral attack on a final judgment. The making of proper distinction between quasi jurisdictional facts and jurisdictional facts determines the validity of a judgment. *Abraham v. Homer, supra.*

Is the entry of a spacing order prior to a pooling order a quasi jurisdictional fact and thus merely directory and not jurisdictional, or is such entry of a spacing order before a pooling order mandatory and a jurisdictional fact necessary to the jurisdiction and power of the Corporation Commission to render a pooling order? This Court in *Abraham v. Homer, supra,* held:

"In a federal court the fact that there is a diversity of citizenship, or that the amount of the controversy reaches the jurisdictional amount, is quasi jurisdictional. Other illustrations in such a court are that the amount of the indebtedness of petitioning debtor is within the amount prescribed by law. In probate matters, where the law provides that the estate of the decedent shall be sold where the personal property is insufficient to pay the debts of the deceased, then facts showing such indebtedness are quasi jurisdictional. Where, in probate proceedings, the law requires that the estate shall not be sold if all the heirs are minors, then facts showing that one or more of them had reached the age of majority are quasi jurisdictional. *Generally speaking, quasi jurisdictional facts are those which do not constitute proof of the existence of the subject matter on the one hand, and do not constitute proof of a cause of action on the other, but are preliminary facts required to exist in order to authorize the Court to proceed and to act.*" (Emphasis supplied).

In the present case the existence of an order creating a spacing unit is a quasi jurisdictional fact which does not constitute proof of the existence of the subject matter and cause of action, i. e. the pooling of working interest owners, but is a preliminary fact or a condition precedent required to exist in order to authorize the Court to proceed and to act. The existence of a spacing unit is a step provided by statute and constitutes a course or procedure in the process of entering a pooling order. The existence of a spacing unit does not "inhere in such degree as a material and substantial part of the judgment itself," but is a preliminary fact "required to exist in order to authorize the court to proceed and to act." *Abraham v. Homer, supra, 102 Okl. 12, 226 P. at 48.*

It is therefore my opinion that the existence of a spacing unit is not a jurisdictional prerequisite for a pooling order but is a preliminary quasi jurisdictional fact or condition precedent that must exist before the Commission has the right to proceed and issue a pooling order. It is my opinion that this is borne out by our statutory scheme. The purpose of the conservation statutes is to prevent waste and protect correlative rights. A pooling order protects the correlative rights of working interest owners by pooling their interests. A spacing order creates the unit, pools royalty interests within the unit, directs that only one well be drilled in the unit within a specific location, and prohibits the drilling of a well at another location or operating or drilling a well in violation of the spacing order. As Note, *Oil & Gas: The Necessity of Obtaining a Pooling Order Before Drilling*, 31 Okla.L.Rev. 451 (1978) points out, a spacing order is necessary and sufficient to satisfy the conservation purposes to prevent the waste of oil and gas. These purposes are accomplished by establishing a well spacing unit, designating a drilling area within the unit, and prohibiting the owners in the drilling unit from drilling anywhere within the tract other than on the designated drilling area. A pooling order is not necessary to give permission to drill to the owner desiring to do so. Such permission is granted at the time the spacing order is issued. A pooling order *only* protects the owner who wishes to drill on the designated drilling location on the land of another owner in the unit who does not want a well drilled, by providing that if he drills a dry hole he will not bear the entire loss himself. It follows that since the right to drill is granted at the time the spacing order is issued and not with a pooling order, and since the pooling order is only designed to protect the owner wishing to drill, the establishment of a drill-

ing unit prior to a pooling order being issued is not a jurisdiction fact material to the existence of the power of the Corporation Commission to issue a pooling order, but is a preliminary quasi jurisdictional fact, a procedural step or condition precedent required to exist before the Corporation Commission can proceed and issue a pooling order.

Quasi jurisdictional facts may not be inquired into in a collateral proceeding and therefore this Court should issue a writ of prohibition against the trial court.

### Judgment Roll Status

The majority raises the function of a menial record keeper under the absolute control of the Corporation Commission to the status of a Clerk in a Common Law Court. It gives a predominantly administrative body, though admittedly a constitutional one, possessing judicial, legislative and executive power,[3] the status of deciding what shall constitute an official judgment roll.[4] This status is granted without check, restraint or guidance of any kind, for presumably only constitutional denials from such regulations might be reviewable.

The Corporation Commission's power to act in legislative and judicial areas is limited.[5] In other words, I find nothing within the Constitution of Oklahoma: Art. 9, Art. 4 § 1 and Art. 7 § 1, or the statutes which authorizes the establishment of officers with functions equivalent to the Clerk of the District Courts (Common Law Courts) or one of common law (general) jurisdiction. How may the Corporation ·Commission's records be given common law effect and dignity by this Court? Who besides the Legislature or the people can grant such power? Certainly not the Supreme Court of Oklahoma, nor a quasi legislative body, the Corporation Commission.

We have wisely held common law procedural fetters and evidentiary rules need not strictly control Corporation Commission actions.[6] The creation of common law equivalent to a judgment roll is a giant, and to me unauthorized, step from this position.

I suggest that the present reversal is an unauthorized and broad departure from our previous approach to proceeding before the Corporation Commission.

I am authorized to state that BARNES, V. C. J., and OPALA, J., concur in the views herein expressed.

---

**3.** *St. Louis & S. F. R. Co. v. Williams,* 25 Okl. 662, 107 P. 428 (1910); *Muskogee Gas & Electric Co. v. State,* 81 Okl. 176, 186 P. 730 (1920) and *Continental Tel. Co. of Okla. v. Hunter,* 590 P.2d 667 (Okl.1979).

**4.** 12 O.S.1971 § 23.

**5.** *Burmah Oil & Gas Co. v. Corporation Commission,* 541 P.2d 834 (Okl.1975) and *Merritt v.*

*Corporation Commission,* 438 P.2d 495 (Okl. 1968).

**6.** *Peppers Rfg. Co. v. Corporation Commission,* 198 Okl. 451, 179 P.2d 899, 904 (1947), a case dealing with allowables. See also *Halpin v. Corporation Commission,* 575 P.2d 109, 111 (Okl.1977), a case concerning exceptions to drilling patterns and penalties (allowables).