Filed 5/4/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 91

Come Big or Stay Home, LLC, Plaintiff and Appellant

v.

EOG Resources, Inc., Defendant and Appellee

No. 20110305

Appeal from the District Court of Mountrail County, Northwest Judicial District, the Honorable Richard L. Hagar, Judge.

AFFIRMED.

Opinion of the Court by Maring, Justice.

James M. Chaney (argued), 101 Park Avenue, Suite 800, Oklahoma City, Okla. 73102; Monte Lane Rogneby (appeared) and John J. Petrik (on brief), P.O. Box 2097, Bismarck, N.D. 58502-2097, for plaintiff and appellant.

David R. Marshall (argued), 200 South 6th Street, Suite 4000, Minneapolis, Minn. 55402-1425; Lawrence Bender (appeared) and Jillian Rene Rupnow (on brief), P.O. Box 1855, Bismarck, N.D. 58502-1855, for defendant and appellee.

Come Big or Stay Home, LLC v. EOG Resources, Inc.

No. 20110305

Maring, Justice.

[¶1] Come Big or Stay Home, LLC (“CBSH”), appeals from a summary judgment dismissing its claims against EOG Resources, Inc. (“EOG”), for refusing to provide it with oil and gas well information unless CBSH agreed to not disclose the information to third parties without EOG’s consent.  We affirm, concluding as a matter of law that CBSH’s theories of recovery are not viable under the circumstances.

 

I

[¶2] EOG owns and develops oil and gas interests in North Dakota and has drilled and operated numerous oil and gas wells in the state.  CBSH owns mineral or leasehold interests in the state, including interests in spacing units where wells have been drilled and operated by EOG.  In late 2008, EOG sent CBSH, a working interest owner, an invitation to participate in the risks of drilling a horizontal oil and gas well in Mountrail County.  
See generally
 
Gadeco, LLC v. Industrial Comm’n
, 2012 ND 33, ¶¶ 3-7 (providing background information about invitations to participate and risk penalties); 
Continental Res., Inc. v. Farrar Oil Co.
, 1997 ND 31, ¶ 3 n.1, 559 N.W.2d 841 (describing horizontal well technology).  The invitation to participate informed CBSH that if it accepted the well proposal and elected to participate in the drilling operation, a joint operating agreement (“JOA”) “for your execution will be sent under separate cover upon your election to participate.”  CBSH elected to participate in the drilling of the well and received a JOA, titled “A.A.P.L. Form 610-1982 Model Form Operating Agreement,” which contained the following provisions:

D. Access to Contract Area and Information:

Each party shall have access to the Contract Area at all reasonable times, at its sole cost and risk to inspect or observe operations, and shall have access at reasonable times to information pertaining to the development or operation thereof, including Operator’s books and records relating thereto.  Operator, upon request, shall furnish each of the other parties with copies of all forms or reports filed with governmental agencies, daily drilling reports, well logs, tank tables, daily gauge and run tickets and reports of stock on hand at the first of each month, and shall make available samples of any cores or cuttings taken from any well drilled on the Contract Area.  The cost of gathering and furnishing information to Non-Operator, other than that specified above, shall be charged to the Non-Operator that requests the information.  Well information will be provided by the Operator as set out in Exhibit “G.”  Such exhibit also provides for notice.

. . . .

XV.P. Non-Operator Confidentiality

Non-Operator agrees not to disclose any information relative to drilling or completion operations to any third party without the express written consent of the Operator which may be withheld at the Operator’s sole discretion, provided however, Operator agrees to allow disclosure if required for any filings with the Securities and Exchange Commission or if required to comply with any court order.

CBSH signed and returned the JOA and accompanying documents to EOG.

[¶3] During the ensuing months, EOG sent CBSH, as a working interest owner, 18 additional invitations to participate in the drilling of horizontal wells in North Dakota.  Except for the location and estimated costs of the proposed wells, these invitations to participate did not differ substantively from the first invitation to participate received by CBSH in late 2008.  CBSH agreed to participate in each well and received from EOG separate JOAs that mirrored the provisions of the JOA received by CBSH after it had elected to participate in the first well.  However, CBSH refused to execute any of the JOAs for the subsequent wells.  After each refusal by CBSH to execute a JOA, EOG sent letters to CBSH explaining it was willing to provide well information to CBSH if it would agree to the nondisclosure provision contained in the JOA.  EOG has explained that the nondisclosure provision is intended to protect its “confidential and proprietary information.”  CBSH refused to sign the nondisclosure letter agreements.

[¶4] CBSH sued EOG seeking damages under various theories for EOG’s failure to provide it with well information pertaining to the last 18 wells in which it had elected to participate.  CBSH eventually moved to compel discovery and EOG moved for summary judgment.  CBSH moved for additional time for discovery under N.D.R.Civ.P. 56(f), arguing “[o]nce EOG responds to discovery, . . . CBSH will be able to more definitively prove its damages.”  The district court granted EOG’s motion for summary judgment and dismissed CBSH’s lawsuit.  The court ruled as a matter of law that EOG did not breach the parties’ contracts, EOG did not breach any fiduciary duties owed to CBSH, and CBSH had no viable claim for conversion.  The court further ruled in the alternative that even if there was a breach of contract, breach of fiduciary duties, or conversion, “a reasonable person would conclude that CBSH has not established a 
basis
 for damages with the requisite degree of certainty or without resort to speculation or conjecture.”  The court determined its decision on the merits rendered it unnecessary to address CBSH’s requests for a declaratory judgment and constructive trust, and its motion to compel discovery.  Although the court did not specifically state CBSH’s N.D.R.Civ.P. 56(f) motion was denied, we assume the court denied the motion because it granted summary judgment in favor of EOG.  
See
 
Alerus Fin. N.A. v. Marcil Grp. Inc.
, 2011 ND 205, ¶ 34, 806 N.W.2d 160.

 

II

[¶5] CBSH argues the district court erred in granting summary judgment dismissing its claims against EOG.

[¶6] In 
Arndt v. Maki
, 2012 ND 55, ¶ 10, we explained our standard for review of summary judgments:

Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law.  A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  In determining whether summary judgment was appropriately granted, we must view the evidence in the light most favorable to the party opposing the motion, and that party will be given the benefit of all favorable inferences which can reasonably be drawn from the record.  On appeal, this Court decides whether the information available to the district court precluded the existence of a genuine issue of material fact and entitled the moving party to judgment as a matter of law.  Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

(quoting 
Saltsman v. Sharp
, 2011 ND 172, ¶ 4, 803 N.W.2d 553).

 

A

[¶7] CBSH argues EOG was not entitled to summary judgment dismissing its breach of contract claim.

[¶8] The party asserting a breach of contract has the burden of proving the existence of a contract, breach of the contract, and damages flowing from the breach.  
See
 
Godon v. Kindred Pub. Sch. Dist.
, 2011 ND 121, ¶ 13, 798 N.W.2d 664.  “A breach of contract is the nonperformance of a contractual duty when it is due.”  
WFND, LLC v. Fargo Marc, LLC
, 2007 ND 67, ¶ 13, 730 N.W.2d 841.

[¶9] CBSH argues the last 18 invitations to participate it executed in this case constituted valid contracts with EOG, even though subsequent written agreements in the form of the JOAs were contemplated by the parties.  Because the JOAs were not executed, CBSH argues the court should nevertheless enforce the invitations to participate by implying reasonable terms that were intentionally left open by the parties.  Reasonable terms, according to CBSH, include terms based upon custom and usage in the oil and gas industry.  In an affidavit presented in opposition to the motion for summary judgment, CBSH’s expert said:

8.  It is the long-established and well-known custom in the oil and gas industry throughout the United States, including in North Dakota, that non-operating working interest owners are entitled to receive well information (including but not limited to logs, daily drilling reports, title opinions, 
etc.
)

9.  It is not industry custom for an Operator to withhold well information from a participant in an operation, nor [is it] industry custom for an Operator to place terms and conditions on a participant’s rights to use such well information once the well information is released to the participant.

. . . .

12.  EOG Resources, Inc.’s position that it will not disclose any information relative to drilling or completion operations unless a participating owner signs an agreement that provides that the “non-

operator agrees not to disclose any information relative to drilling or completion operations to any third party without the express written consent of the operator which may be withheld at the operator’s sole discretion” is patently unreasonable to the small oil and gas business.  Large companies such as EOG generally have geologists and engineers as employees so they do not need to disclose well information to non-

employees.  Small oil and gas companies, on the other hand, often must use outside consultants, including engineers and geologists, to evaluate the well information to make decisions concerning business opportunities.

See also
 
Centurion Oil, Inc. v. Stephens Prod. Co.
, 857 P.2d 821, 826 (Okla. Ct. App. 1993) (noting “evidence was presented that it is industry custom for an operator to supply well logs to other participants”) (footnote omitted).  The district court refused to imply an omitted term into the invitations to participate requiring EOG to provide well information without restrictions, reasoning “[t]he parties cannot be presumed to have acted with reference to the alleged industry custom and usage when CBSH had knowledge to the contrary regarding EOG’s position on giving out well information at the time it accepted the invitations to participate.”

[¶10] In 
Tong v. Borstad
, 231 N.W.2d 795, 800 (N.D. 1975), this Court held that “although a written contract that is complete in itself cannot be altered by parol evidence as to custom or usage . . . , where an agreement is silent or ambiguous on a point, and where there is a well-established custom concerning the subject, so that the parties may be presumed to have acted with reference thereto, such custom will be given effect as a part of the agreement.”  
See also
 
Aasmundstad v. Dickinson State Coll.
, 337 N.W.2d 792, 797 (N.D. 1983); 
Hager v. Devils Lake Pub. Sch. Dist.
, 301 N.W.2d 630, 634 (N.D. 1981).  We have noted that “courts have, in fact, been quite liberal in finding that additional terms, usages, and other dealings between the parties could be harmonized with apparently contradictory express terms.”  
Urbana Farmers Union Elevator Co. v. Schock
, 351 N.W.2d 88, 92 (N.D. 1984).  We have also recognized “the modern trend in contract law to allow courts to supply omitted terms whenever there exists a reasonable basis for their determination.”  
Drees Farming Ass’n v. Thompson
, 246 N.W.2d 883, 887 (N.D. 1976) (footnote omitted); 
see also
 
Ehrman v. Feist
, 1997 ND 180, ¶ 5, 568 N.W.2d 747; Restatement (Second) of Contracts § 204 (1981).  Whether a custom or usage exists is ordinarily a question of fact.  
See
 
Langer v. Bartholomay
, 2008 ND 40, ¶ 15, 745 N.W.2d 649; 
VND, LLC v. Leevers Foods, Inc.
, 2003 ND 198, ¶ 42, 672 N.W.2d 445.

[¶11] We assume, for purposes of argument only, it is a long-established custom in the oil and gas industry that non-operating working interest owners are entitled without confidentiality restrictions to receive well information from the operator, even in the context of horizontal well drilling.  
But see
 L. Larsen, 
Horizontal Drafting: Why Your Form JOA May Not Be Adequate for Your Company’s Horizontal Drilling Program
, 48 Rocky Mtn. Min. L. Found. J. 51, 54, 60, 61 (2011) (noting the 1956, 1977, 1982 and 1989 versions of the American Association of Petroleum Landmen (AAPL) Form 610 Model Form Operating Agreement do not address horizontal drilling; suggesting the addition of nondisclosure provisions to protect patented, patentable, and proprietary information in horizontal drilling situations; and citing other articles dating back to 1991 recommending nondisclosure provisions under these circumstances).  Here, although CBSH asserts it executed the first JOA in 2008 only because it did not notice the nondisclosure provision, the “[f]ailure to read a document before signing does not excuse ignorance of its contents unless the party shows that he was prevented from reading it by fraud, artifice, or design by the other party or his authorized representative.”  
David v. Merrill Lynch, Pierce, Fenner and Smith, Inc.
, 440 N.W.2d 269, 273-74 (N.D. 1989) (internal quotations and citations omitted).  CBSH does not assert that it was prevented from reading the first JOA in 2008.  Consequently, CBSH had knowledge that EOG would not provide it with well information unless it agreed to hold the information confidential when it executed the subsequent 18 invitations to participate at issue in this case.

[¶12] This would be a closer case if CBSH had not had prior knowledge of EOG’s intention to withhold well information unless non-operators agreed to the nondisclosure provision.  Under the circumstances of this case, however, the law clearly does not support CBSH’s position.  

[¶13] The Restatement (Second) of Contracts § 219 (1981) defines the term “usage” as “habitual or customary practice.”  The Restatement further provides:

Usage Supplementing an Agreement

An agreement is supplemented or qualified by a reasonable usage with respect to agreements of the same type if each party knows or has reason to know of the usage and 
neither party knows or has reason to know that the other party has an intention inconsistent with the usage
.

Restatement (Second) of Contracts § 221 (1981) (emphasis added); 
see also
 Restatement (Second) of Contracts § 220 (1981).  A comment to section 221 explains:

d.
  
Intention inconsistent with usage
.  The parties to an agreement are not bound to follow the usages of others or their own prior usages.  If either party has reason to know that the other has an intention inconsistent with a particular usage, the usage is not applicable.  Such an intention need not be manifested in any particular way; whether the parties contracted with reference to a usage is determined on the basis of all the circumstances, and a usage may be excluded by the same type of proof which would include it.

Comment d to Restatement (Second) of Contracts § 221 (1981); 
see also
 12 R. Lord, 
Williston on Contracts
 § 34:12 (4th ed. 1999) (“persons acting within the scope of the usage’s operation must acquiesce in it”) (footnote omitted); 
Southern New Jersey Rail Grp., LLC v. Lumbermens Mut. Cas. Co.
, 2007 WL 2609894 *1 n.3 (S.D.N.Y. Sept. 5, 2007) (“the language of the policy requiring notice to the defendant carrier gave plaintiffs ample reason to know that defendant’s intention was inconsistent with any industry custom”).  This Court has similarly recognized that custom and usage cannot override expressed intentions of parties to a contract.  
See
 
Hamilton v. Winter
, 281 N.W.2d 54, 59 (N.D. 1979); 
Reitman v. Miller
, 78 N.D. 1003, 1007-08, 54 N.W.2d 477, 479-80 (1952).  CBSH cannot impose through the guise of usage or custom a contract term upon EOG that CBSH knew or had reason to know was completely contrary to EOG’s intentions.

[¶14] CBSH argues the district court’s ruling leaves it subject to an arrangement where EOG “has unlimited authority to bill expenses and disburse revenue,” and lists several hypotheticals in which EOG could overcharge or underdisburse non-operators because “EOG is not required to provide any explanation or back up information as to revenue or expenses.”  First, CBSH has not challenged any expenses EOG actually billed to CBSH.  Second, under the circumstances, this case is not about CBSH’s right to have access to well information, but is about CBSH’s purported right to do as it pleases with the information after the information has been received.  CBSH need only agree to not share well information with third parties unless EOG consents to have access to the information it seeks.

[¶15] Because there are no provisions in the parties’ contracts that allow CBSH unrestricted access to well information, EOG’s failure to provide the information to CBSH cannot amount to a breach of contract.  We conclude the district court did not err in dismissing CBSH’s breach of contract claim as a matter of law.

 

B

[¶16] CBSH argues the district court erred in granting summary judgment dismissing its breach of fiduciary duty claim against EOG.  CBSH contends EOG owes it fiduciary duties because they are joint venturers and cotenants.

[¶17] Four elements must be present for a business enterprise to constitute a joint venture: “‘(1) contribution by the parties of money, property, time, or skill in some common undertaking, but the contributions need not be equal or of the same nature; (2) a proprietary interest and right of mutual control over the engaged property; (3) an express or implied agreement for the sharing of profits, and usually, but not necessarily, of losses; and (4) an express or implied contract showing a joint venture was formed.’”  
Sandvick v. LaCrosse
, 2008 ND 77, ¶ 11, 747 N.W.2d 519 (quoting 
SPW Assocs., LLP v. Anderson
, 2006 ND 159, ¶ 10, 718 N.W.2d 580).  The undisputed evidence shows the second and fourth elements cannot be established in this case.

[¶18] CBSH cannot establish a right of mutual control over the engaged property because it admits in its complaint that EOG “has unfettered control over all aspects of drilling, completing and producing the Wells.”  CBSH cannot establish an express or implied contract showing a joint venture was formed because it had knowledge that the JOA it executed in late 2008 specifically provided that “[i]t is not the intention of the parties to create . . . a . . . joint venture or agency relationship.”  
See
 2 Howard R. Williams & Charles J. Meyers, 
Oil and Gas Law
 § 503.2, at pp. 588.11-588.12 (2011) (“The normal rule . . . is that in the absence of a joint venture being created, the joint operating agreement does not create a fiduciary relationship between the operator and the non-operator.”) (footnote omitted).  As a matter of law, no joint venture was created between the parties.

[¶19] To support its claim that a cotenancy exists between CBSH and EOG, CBSH relies on 
Schank v. North Am. Royalties, Inc.
, 201 N.W.2d 419, 430 (N.D. 1972), in which this Court stated that “mineral lessees of different cotenants become cotenants of each other.”  CBSH claims 
Schank
 stands for the proposition that EOG and CBSH are cotenants because “both hold the executive rights relating to lands within the same spaced units.”  
Schank
, however, involved a situation in which cotenants who held undivided fractional interests in minerals underlying property leased those interests to others.  
Id.
 at 423, 424, 429, 430.  The 
Schank
 Court pointed out that “[i]t is a well-

established general rule in most jurisdictions that the owners of 
undivided
 portions of gas and oil rights in and under the same land are tenants in common.”  
Id.
 at 429 (emphasis added).  This Court has since held in a case involving “separately owned tracts or interests within a spacing unit” that the statements about cotenancy in 
Schank
 are inapplicable where “the parties are not the owners of undivided portions of gas and oil rights in and under the same land.”  
Slawson v. North Dakota Indus. Comm’n
, 339 N.W.2d 772, 777 n.4, 779 (N.D. 1983).  CBSH has not claimed that the parties leased mineral rights from cotenants.

[¶20] Furthermore, North Dakota law makes it clear that the pooling of separately owned tracts does not create a cotenancy.  Section 38-08-09.7, N.D.C.C., provides that “[t]he obligation or liability of the lessee or other owners of the oil and gas rights in the several separately owned tracts for the payment of unit expenses is at all times several and not joint or collective.”  Section 38-08-09.8, N.D.C.C., also provides that “[n]othing contained in sections 38-08-09.1 through 38-08-09.16 [addressing pooling and unitization] may be construed to require a transfer to or vesting in the unit of title to the separately owned tracts or leases thereon within the unit area.”  The Oklahoma Supreme Court, construing similar statutes governing forced and voluntary pooling, has also recognized that pooling and unitization of separately owned tracts do not create a cotenancy between the several leaseholders.  
See
 
Tenneco Oil Co. v. District Court of the Twentieth Judicial Dist.
, 465 P.2d 468, 469 (Okla. 1970).  As a matter of law, CBSH and EOG are not cotenants.

[¶21] Moreover, even if EOG owed CBSH fiduciary duties under some viable theory, we have said the “existence and scope of a fiduciary duty depends upon the language of the parties’ agreement.”  
Grynberg v. Dome Petroleum Corp.
, 1999 ND 167, ¶ 21, 599 N.W.2d 261.  We have upheld the district court’s refusal to supply a term to the invitations to participate requiring EOG to give CBSH well information without restrictions.  CBSH, as a matter of law, cannot establish a breach of fiduciary duty in this case.

[¶22] We conclude the district court did not err in granting summary judgment dismissing its breach of fiduciary duty claim against EOG.

 

C

[¶23] CBSH argues the district court erred in granting summary judgment dismissing its conversion claim against EOG.

[¶24] “Conversion consists of a tortious detention or destruction of personal property, or a wrongful exercise of dominion or control over the property inconsistent with or in defiance of the rights of the owner.”  
Ritter, Laber & Assocs., Inc. v. Koch Oil, Inc.
, 2004 ND 117, ¶ 11, 680 N.W.2d 634.  Where, as here, a claim for conversion and a claim for breach of contract arise under the same facts, tort liability for conversion does not occur unless the conduct that constitutes a breach of contract also gives rise to liability independent of the existence of a contract between the parties.  
See
 
id.
 at ¶ 19; 
Van Sickle v. Hallmark & Assocs., Inc.
, 2008 ND 12, ¶ 22, 744 N.W.2d 532.

[¶25] To demonstrate a non-contractual right to the well information, CBSH relies on EOG’s “fiduciary duty” and “North Dakota statutes and rules.”  We have rejected the claim that EOG owes CBSH any fiduciary duties in this case, and CBSH has not brought to our attention any statute or rule that addresses the right of access to the well information it seeks.  CBSH’s claim does not give rise to tort liability for conversion in this case.

[¶26] We conclude the district court did not err in granting summary judgment dismissing CBSH’s claim for conversion against EOG.

 

D

[¶27] Because we affirm the district court’s rulings on CBSH’s breach of contract, breach of fiduciary duty and conversion claims, we do not address the court’s alternative ruling that CBSH “has not established a 
basis
 for damages” or its rulings on CBSH’s related discovery motions.

 

III

[¶28] It is unnecessary to address the other issues raised because they are either moot, unnecessary to the decision, or are without merit.  The judgment is affirmed.

[¶29] Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom

John E. Greenwood, D.J.

Gerald W. VandeWalle, C.J.

[¶30] The Honorable John E. Greenwood, D.J., sitting in place of Kapsner, J., disqualified.