2006 ND 159

**SPW ASSOCIATES, LLP, Plaintiff, Appellee and Cross–Appellant**

**v.**

**Douglas H. ANDERSON, a/k/a Douglas Anderson, Jim Stockeland, Michael Ceynar, Defendants**

**and**

**Murdo Cameron, d/b/a Cameron & Sons Aircraft, (f/k/a Flight Training Devices), Defendant, Appellant and Cross–Appellee.**

**No. 20050205.**

Supreme Court of North Dakota.

July 18, 2006.

Rehearing Denied Aug. 16, 2006.

Michael D. McNair, McNair, Larson & Carlson, Ltd., Fargo, N.D., for plaintiff, appellee and cross-appellant.

Larry L. Boschee (argued) and Patrick W. Durick (on brief), Pearce & Durick, Bismarck, N.D., for defendant, appellant and cross-appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Murdo Cameron appealed from a district court judgment determining that SPW Associates, LLP ("SPW"), had lawful possession of an airplane based upon its security interest in the airplane. SPW cross-appealed, claiming the district court erred in ordering SPW to sell the airplane after giving notice to all of the defendants in the action. We affirm the district court's determination that SPW had lawful possession of the airplane under its valid security interest, but we reverse that portion of the judgment ordering SPW to sell the airplane.

I

[¶ 2] Cameron is a commercial airline pilot who is interested in the vintage P–51 Mustang airplane. He developed and manufactured graphite body parts and other components to make replicas of the P–51. He placed advertisements in aviation magazines seeking someone to design and manufacture additional parts and construct the airplanes.

[¶ 3] Douglas Anderson answered Cameron's advertisement and, in 1996, Anderson and Cameron entered into a written agreement to build two airplanes. Cameron was to provide an engine for the first airplane and various other component

parts for both airplanes, and Anderson was to design and manufacture additional parts and build the airplanes. Upon the first flight of one of the planes, Anderson was to pay Cameron for the engine, with the price dependent upon the amount of time it took Anderson to build the airplane. Although not expressly stated in the written agreement, Cameron and Anderson had agreed that each would keep one of the two completed airplanes. The parties intended to build additional planes for sale to the public.

[¶ 4] In 1997, Anderson, through his company, Exclusive Aviation, LLP, entered into a loan agreement with SPW to finance the operation. The first airplane was pledged as security for the loan, and Anderson also signed a personal guaranty for the loan. SPW perfected a security interest in the airplane by filings with the State of North Dakota and the Federal Aviation Administration (FAA). Anderson did not disclose to SPW his agreement with Cameron and did not disclose to Cameron the loan transaction with SPW. The second airplane was never built.

[¶ 5] Anderson defaulted on the loan and, on August 18, 1998, signed a "Transfer of Collateral Upon Peaceable Foreclosure and Renunciation" granting possession of the completed first airplane to SPW. In May 1999, Cameron filed a lien against the airplane with the FAA. The lien was twice refiled, and was finally recorded on April 28, 2000.

[¶ 6] SPW commenced this action in 2002, seeking a declaratory judgment that it was entitled to possession of the aircraft and that its security interest was superior to all other liens against the plane. Cameron answered, claiming that his interest in the airplane was superior to the security interest of SPW, and alternatively sought to reclaim possession of the engine and various component parts he had provided

for the plane. After a bench trial, the district court found that Anderson and Cameron had entered into a joint venture and that Anderson was authorized to grant SPW a security interest in the airplane, which was joint venture property. The court determined that SPW had a perfected security interest in the airplane superior to any rights of Cameron and was entitled to possession of the plane. The court further held, however, that SPW had failed to notify Cameron of its intent to accept the plane as payment in full on the debt, and SPW was therefore required to sell the airplane in a commercially reasonable manner with notice to all defendants. On appeal, Cameron contends that there was no joint venture and that he was entitled to possession of the engine, propeller, and other component parts he had provided for the airplane. SPW cross-appealed, claiming the district court erred in requiring it to sell the airplane rather than keep it in payment of the debt.

II

[¶ 7] Cameron first contends that the district court erred in determining the agreement between the parties constituted a joint venture.

[¶ 8] North Dakota has historically recognized the joint venture relationship. *Voltz v. Dudgeon*, 334 N.W.2d 204, 206 (N.D.1983); *see Kelly v. Lang*, 62 N.W.2d 770 (N.D.1953); *Brudvik v. Frosaker Blaisdell Co.*, 56 N.D. 215, 216 N.W. 891 (1927); *Gehlhar v. Konoske*, 50 N.D. 256, 195 N.W. 558 (1923). A joint venture is generally considered akin to a partnership, although more limited in scope and duration, and principles of partnership law apply to the joint venture relationship. *See Thompson v. Danner*, 507 N.W.2d 550, 556 (N.D.1993); *Edwards v. Thompson*, 336 N.W.2d 612, 616 n. 7 (N.D.1983); 1

Alan R. Bromberg & Larry E. Ribstein, *Partnership* § 2.06(a) (2006).

[¶ 9] Section 45-15-01(1), N.D.C.C., provides that a partner is an agent of, and may bind, the partnership:

Each partner is an agent of the partnership for the purpose of its business. An act of a partner, including the execution of an instrument in the partnership name, for apparently carrying on in the ordinary course the partnership business or business of the kind carried on by the partnership binds the partnership, unless the partner had no authority to act for the partnership in the particular matter and the person with whom the partner was dealing knew or had received a notification that the partner lacked authority

Under an earlier, similar version of the partnership statute, applying the same agency principles, this Court held that "a chattel mortgage given by a general partner upon partnership property for the purpose of binding the partnership and carrying on the partnership business is valid as between the parties to the mortgage." *Maercklein v. Maercklein*, 64 N.D. 733, 256 N.W. 180, Syll. ¶ 1 (1934); *see also First Nat'l Bank & Trust v. Scherr*, 467 N.W.2d 427, 429 (N.D.1991) ("A partner, as an agent of the partnership, normally binds the partnership by executing any instrument that carries on the business of the partnership in the usual way."); *In re Wolsky*, 53 B.R. 751, 754 (Bankr.D.N.D. 1985) (a partner has the authority to grant a security interest in partnership property). Applying these principles in this case, if Anderson was a joint venturer with Cameron he had the authority to grant a security interest in joint venture property and the security agreement would be valid.

[¶ 10] For a business enterprise to constitute a joint venture, the following four elements must be present:

(1) contribution by the parties of money, property, time, or skill in some common undertaking, but the contributions need not be equal or of the same nature; (2) a proprietary interest and right of mutual control over the engaged property; (3) an express or implied agreement for the sharing of profits, and usually, but not necessarily, of losses; and (4) an express or implied contract showing a joint venture was formed.

*Thompson*, 507 N.W.2d at 556 (citations omitted); *see also Voltz*, 334 N.W.2d at 206; *In re Cook*, 63 B.R. 789, 799 (Bankr. D.N.D.1986). There is, however, no definite formula for identifying the joint venture relationship in all cases, and each case will depend upon its own unique facts. *Voltz*, at 206.

[¶ 11] In this case there is no dispute on three of the four elements. Both parties made contributions to the enterprise, both exerted a degree of control over the enterprise, and there was a written contract evidencing the agreement. Cameron contends, however, that there was no evidence showing an agreement, either express or implied, to share profits.

[¶ 12] In this case the parties admittedly contemplated building additional airplanes for sale to the public, and evidence was presented at trial indicating it would not have been economically feasible to design and construct the necessary molds, dies, and tooling for only two airplanes. The parties' written agreement also expressly recognized that additional planes would be built for sale. For example, the agreement provided that Cameron would provide computerized documentation and lab test results on composite parts he manufactured to Anderson "and future aircraft purchasers," and Anderson was to "develop an inspection and documentation process on the first two airplanes, and all future airplanes purchased." The agree-

ment further provided that construction of "all appliances" to be used in the manufacturing process "will be such that they can be used for multiple year production runs." Under these circumstances, where the parties entered into a relationship to build airplanes and expressly contemplated further sales of planes to third persons, the trial court's conclusion there was a joint venture necessarily implied an agreement to share profits.

[¶ 13] Cameron contends it was his intent to be merely a parts supplier, and that his only profit would be from sale of component airplane parts to Anderson. The agreement between the parties, however, expressly recognizes a much broader, on-going role by Cameron in the construction of the airplanes. The agreement does not merely envision that Cameron will sell parts to Anderson, but creates reciprocal duties and obligations between Cameron and Anderson in the design and manufacture of component parts and completed airplanes.

[¶ 14] We conclude the district court did not err in determining that Cameron and Anderson had entered into a joint venture.

### III

[¶ 15] Cameron contends that, even if there was a joint venture, he had merely loaned the engine and composite parts to Anderson and those parts did not become joint venture property. Cameron argues that, if the parts were not joint venture property, Anderson had no authority to grant a security interest in them to SPW.

[¶ 16] Cameron's argument is based upon his assertion that he supplied the engine, propellor, and other aircraft parts as a gratuitous bailment. The terms of the parties' agreement, however, do not indicate a bailment. As noted by the Unit-

ed States Court of Appeals for the Eighth Circuit:

The term "bailment" in its ordinary legal sense signifies a contract resulting from the delivery of a thing by the bailor to the bailee on condition that it be restored to the bailor in accordance with his directions as soon as the purpose for which it was bailed is satisfied.

*Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.,* 254 F.3d 706, 712 (8th Cir.2001) (quoting *Temple v. McCaughen & Burr, Inc.,* 839 S.W.2d 322, 326 (Mo.Ct.App.1992)); *see also* 8 C.J.S. *Bailments* § 1 (2005). There is no indication that the engine, propellor, and other component parts were to be returned to Cameron when the enterprise was complete. Rather, the parties' agreement indicates that these items were intended to be used in constructing, and would become part of, the two airplanes to be completed by Anderson.

[¶ 17] We have sustained the district court's determination that the agreement between the parties created a joint venture. When Cameron supplied parts to be incorporated into the airplanes, those items became joint venture property. Thus, Anderson had the authority to grant a security interest in the first airplane as joint venture property, including the parts which had been supplied by Cameron. We therefore reject Cameron's claim that the parts were not joint venture property.

### IV

[¶ 18] SPW has cross-appealed, alleging the district court erred in holding SPW was required to sell the airplane in a commercially reasonable manner after notice to all defendants. The court determined that SPW was not entitled to keep the airplane as full payment of the debt because SPW never gave notice to Cameron

of its intent to retain the airplane as payment. Cameron contends that he had an ownership interest in the property and therefore was entitled to notice of SPW's intent to keep the airplane in satisfaction of the debt. *See* N.D.C.C. § 41–09–115.

■ [¶ 19] SPW acquired the airplane when Anderson signed the "Transfer of Collateral Upon Peaceable Foreclosure and Renunciation," which granted SPW possession of the airplane and expressly authorized SPW to "sell, use, hold, operate, lease or otherwise dispose of the collateral" without further notice. The district court found, and Cameron does not dispute, that Anderson thereby waived any right to further notice regarding disposition of the collateral, including SPW's decision to accept the collateral as payment in full.

[¶ 20] A joint venturer is an agent of the joint venture and may bind the joint venture by executing any instrument that carries on the business of the joint venture. *See* N.D.C.C. § 45–15–01(1); *Scherr*, 467 N.W.2d at 429; *Wolsky*, 53 B.R. at 754. The airplane, including all of its component parts, was joint venture property. Thus, when Anderson signed the document transferring the airplane to SPW and waiving any further notice of its disposition, Anderson bound the joint venture to the terms of the agreement. Furthermore, knowledge of or notice to one joint venturer is presumed to be knowledge of or notice to the joint venture. *See* N.D.C.C. § 45–13–02(6); *Matrix Props. Corp. v. TAG Invs.*, 2000 ND 88, ¶ 12, 609 N.W.2d 737. Because Cameron and Anderson had entered into a joint venture, Cameron was not entitled to separate notice of SPW's intent to keep the collateral in payment of the debt.

■ [¶ 21] Nor was Cameron entitled to notice as a secured party. The relevant statutory provision at the time of SPW's receipt of the airplane in 1998 was N.D.C.C. § 41–09–51(2):

> In any case involving consumer goods or any other collateral, a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor if the debtor has not signed after default a statement renouncing or modifying the debtor's rights under this subsection. In the case of consumer goods, no other notice need be given. In other cases, notice shall be sent to any other secured party from whom the secured party has received (before sending the secured party's notice to the debtor or before the debtor's renunciation of the debtor's rights) written notice of a claim of an interest in the collateral. If the secured party receives objection in writing from a person entitled to receive notification with twenty-one days after the notice was sent, the secured party must dispose of the collateral under section 41–09–50. In the absence of such written objection, the secured party may retain the collateral in satisfaction of the debtor's obligation.

Under the statute, SPW was only required to give notice to other secured parties if SPW had received written notice of the other's claim of an interest in the collateral before the debtor's renunciation of his rights in the collateral. In this case, Cameron's claimed security interest in the airplane had not yet been filed or recorded when SPW received possession of the airplane and Anderson signed the transfer agreement waiving all rights in the collateral. Furthermore, Cameron never sent to SPW written notice of any claimed security interest in the plane. Therefore, under N.D.C.C. § 41–09–51(2), SPW was entitled to retain the airplane in satisfaction of the debt.

[¶ 22]   We conclude the district court erred in ordering SPW to sell the airplane after notice to all defendants.

V

[¶ 23]   We have considered the remaining issues and arguments raised by the parties and they are either unnecessary to our decision or are without merit.   We reverse that portion of the judgment ordering SPW to sell the airplane in a commercially reasonable manner with notice to all defendants.   In all other respects, the judgment is affirmed.

[¶ 24] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.