# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-1734

_____

Pitchblack Oil, LLC; Dustin J. Stuber, Trustee of the Good Shepherds Royalty
Trust; Suzanne M. Young, Trustee of the Good Shepherds Royalty Trust; Douglas
R. Hansen; Lori A. Hansen

*Plaintiff*s

v.

Hess Bakken Investments II, LLC; Hess Corporation; Rocky Svihl, Trustee of the
RGKH Mineral & Royalty Trust dated November 1, 1995; Whitetail Wave LLC

*Defendant*s

------------------------------

Hess Bakken Investments II, LLC; Hess Corporation

*Cross Claimants - Appellees*

v.

Rocky Svihl

*Cross Defendant*

Whitetail Wave LLC

*Cross Defendant - Appellant*

_____

No. 18-1737

_____

Pitchblack Oil, LLC; Dustin J. Stuber, Trustee of the Good Shepherds Royalty
Trust; Suzanne M. Young, Trustee of the Good Shepherds Royalty Trust; Douglas
R. Hansen; Lori A. Hansen

*Plaintiffs - Appellants*

v.

Hess Bakken Investments II, LLC; Hess Corporation

*Defendants - Appellees*

Rocky Svihl, Trustee of the RGKH Mineral & Royalty Trust dated November 1,
1995; Whitetail Wave LLC

*Defendant*s

_____

Appeals from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: October 17, 2019
Filed: February 6, 2020

_____

Before SMITH, Chief Judge, GRUENDER and BENTON, Circuit Judges.

_____

SMITH, Chief Judge.

-2-

Pitchblack Oil, LLC ("Pitchblack") and Whitetail Wave, LLC ("Whitetail") filed suit against Hess Bakken Investments II, LLC and Hess Corporation (collectively "Hess"), arguing that their overriding royalty interests in a number of oil and gas leases ("Subject Leases")[1] should continue to burden various top leases[2] ("Top Leases") that Hess acquired over the Subject Leases. The district court[3] granted summary judgment in favor of Hess, explaining that none of the Top Leases were extensions or renewals of the Subject Leases, and, therefore, the overriding royalty interests did not burden the Top Leases. We affirm.

## I. *Background*

Between October and December 2005, Rocky Mountain Exploration, Inc. (RME) acquired the Subject Leases covering lands in Dunn County, North Dakota, in a partnership with the Stuber Group, which included Pitchblack and Whitetail. All of the Subject Leases were entered into for five years, except for the Luther Lease, which was ultimately extended to a term of five years. In addition, the Subject Leases contained a clause, stating that the "Lessor agrees that Lessee shall not be obligated

---

[1]These included leases from Pauline Kostelnak; C. James Luther, Trustee of Trust B pursuant to the Last Will and Testament of James H. Luther ("Luther Lease"); George E. Schmidt and Joy R. Schmidt; James T. Wallace and Linda J. Wallace; Edward G. and Martha E. Kudrna Mineral Trust, Gary Kudrna, Trustee; Evelyn Miller, Vivian Buck, Violet Zinke, Shirley Roemmich, and Marlys Bertsch; Leland D. Schmidt, Howard A. Schmidt, and Johanna Schmidt, Emrel E. Schmidt and Lorene I. Schmidt, Doris Mitchell, and Nyle Christensen; Linda Larsen Wallace, Susan Larsen Tuhy, Sandra Larsen Ribb, and Cheryl Ann Larsen Krieger ("Larsen Leases"); and Elmo Fiebiger.

[2]"A top lease is a lease granted by a landowner during the existence of a recorded [oil and gas] lease which is to become effective if and when the existing lease expires or is terminated." *Valentina Williston, LLC v. Gadeco, LLC*, 878 N.W.2d 397, 399 (N.D. 2016) (internal quotations omitted).

[3]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

. . . to commence or continue any operations during the primary term." *See, e.g.,* Appellants' App. at 9, ¶ 2.

On May 15, 2006, RME granted an "Assignment of Overriding Royalty Interests" ("Assignment") to the Stuber Group, carving an interest out of the Subject Leases. The Assignment explained that the overriding royalty interests would burden "any extensions or renewals thereof [i.e. of the Subject Leases] entered into within 180 days of expiration of the applicable Lease." Appellants' Add. at 14. In addition, the Assignment also stated that the "Assignor makes no warranty, express, implied or statutory, as to any of the rights, titles or interest hereby conveyed." *Id.* at 15.

During the terms of the Subject Leases, RME assigned an 80 percent interest in the Subject Leases to Tracker Resource Exploration, NC, LLC ("Tracker"), retaining the remaining 20 percent for itself. In 2009, Tracker assigned its interest to TRZ Energy LLC ("TRZ"). TRZ then began acquiring Top Leases covering some of the same lands as the Subject Leases. In addition, LoneTree Energy & Associates, LLC ("LoneTree") acquired some of the Top Leases and assigned them in their entirety to TRZ in 2009. TRZ soon became a part of a subsidiary owned by Hess. Therefore, by October 2010, through a series of purchases and assignments, Hess owned almost all of the Subject Leases and Top Leases.

Each Top Lease differed in some respect from the underlying Subject Lease. All of the Top Leases had different primary terms and different royalty amounts than the Subject Leases. Although the majority of the lessors from the Subject Leases remained the same, a few additional successors did enter into various Top Leases. The Top Leases also provided different consideration and contained different provisions, such as Shut-In, Mother Hubbard, Injection of Fluids, Limitation of Liability, Indemnification Against Environmental Damage, and Pugh Clauses. Some of the Top Leases contained different setback requirements, and although most of the Top Leases covered the same tracts of land as the Subject Leases, a few of the Top

Leases actually covered different tracts of land. Finally, although the majority of the Top Leases were entered into before the expiration of the Subject Leases, the Larsen Top Leases were entered into after the Larsen Leases expired.

After Hess denied that the overriding royalty interests burdened the Top Leases, Pitchblack and Whitetail brought suit against Hess. Upon motion, the district court granted summary judgment in favor of Hess, explaining that the Top Leases were new and distinct leases and not extensions or renewals of the Subject Leases. As new leases, the Top Leases were not burdened by the overriding royalty interests of the expired Subject Leases. Pitchblack and Whitetail appeal.

## II. *Discussion*

On appeal, Pitchblack and Whitetail argue that the Top Leases are renewals or extensions of the Subject Leases and, therefore, are burdened by the overriding royalty interests in the Subject Leases. "This court reviews de novo the district court's interpretation of a contract and its grant of summary judgment." *First Dakota Nat'l Bank v. Eco Energy, LLC*, 881 F.3d 615, 617 (8th Cir. 2018). When sitting in diversity, we apply the forum state's substantive law, and if that state's "[s]upreme [c]ourt has not addressed an issue, we must predict what rule the court would adopt." *Chew v. Am. Greetings Corp.*, 754 F.3d 632, 635 (8th Cir. 2014).

## A. *No Fiduciary Duty*

Pitchblack and Whitetail argue that Hess owed them an implied duty of fair dealing to attempt to extend or renew the Subject Leases in order to prevent a "washout"[4] of their overriding royalty interests. They argue that, given this implied duty, there is no need for there to be a special relationship between the parties.

---

[4]"A washout is conduct by an operator designed to extinguish the overriding royalty interest while at the same time preserving the operator's interest." *Sawyer v. Guthrie*, 215 F. Supp. 2d 1254, 1258 n.2 (D. Wyo. 2002).

Further, Pitchblack and Whitetail assert that this court should follow *Independent Gas & Oil Producers, Inc. v. Union Oil Co.*, 669 F.2d 624 (10th Cir. 1982).

In *Independent Gas*, the Tenth Circuit, interpreting Oklahoma law, explained that "Oklahoma courts have ruled that a lease assignment expressly subjecting lease extensions and renewals to an overriding royalty interest converts a new lease procured by the assignee into a renewal of the old one to which the reserved royalty attaches." *Id.* at 627. The Tenth Circuit concluded that Oklahoma based its rule upon implied fiduciary obligations. *Id.*

In addition to *Independent Gas*, Pitchblack and Whitetail point to *Reynolds-Rexwinkle Oil, Inc. v. Petex, Inc.*, where the Supreme Court of Kansas found that the assignor of an overriding royalty interest in a lease owed the assignee a duty of fair dealing based on Kansas law. 1 P.3d 909, 920–21 (Kan. 2000). The Kansas court held that the second lease on the land, which was substantially similar to the first lease, was an extension or renewal of the original lease. *Id.*

Pitchblack and Whitetail's argument, however, is flawed. Unlike Oklahoma and Kansas, North Dakota has refused to imply fiduciary obligations into contractual agreements. Under North Dakota law, "[t]he existence and scope of a fiduciary duty depends upon the language of the parties' agreement." *Grynberg v. Dome Petroleum Corp.*, 599 N.W.2d 261, 267 (N.D. 1999). For example, in *Come Big or Stay Home, LLC v. EOG Resources, Inc.*, a lessee attempted to impose fiduciary duties on a well operator by asserting that they were joint venturers and cotenants. 816 N.W.2d 80, 86–87 (N.D. 2012). The Supreme Court of North Dakota declined to imply fiduciary duties and explained that, even assuming the oil operator owed a fiduciary duty to the lessee under one of these theories, the existence and scope of the duty would still be set by contractual language. *Id.* In addition, North Dakota does not apply the implied covenant of good faith and fair dealing to any contract other than an insurance agreement. *WFND, LLC v. Fargo Marc, LLC*, 730 N.W.2d 841, 851 (N.D. 2007).

-6-

Based on North Dakota's strong precedent, we predict that North Dakota would not imply a fiduciary duty beyond the terms of the Assignment. Here, the Assignment did not include any fiduciary duties. In fact, the Assignment expressly rejected any express or implied obligations, stating that the "Assignor makes no warranty, express, implied or statutory, as to any of the rights, titles or interest hereby conveyed." Appellant's Add. at 15. In addition, neither Pitchblack nor Whitetail rebutted the district court's assessment that neither party alleged a special relationship with Hess or bad faith by Hess. Therefore, Hess did not owe Pitchblack or Whitetail any fiduciary duty that would have required Hess to treat the Top Leases as extensions or renewals.

As a fallback argument, Pitchblack asserted at oral argument that *ANR Western Coal Development Co. v. Basin Electric Power Cooperative* concluded that North Dakota law implies a duty upon a coal lessee to develop its leases for the benefit of an owner of overriding royalty interests in those leases. 276 F.3d 957, 964–66 (8th Cir. 2002). Although an accurate statement of the law, we are unwilling to extend an implied covenant of reasonable development to imply fiduciary duties into the overriding royalties. North Dakota law places primacy on the language of the Agreement. Notably, *Olson v. Schwartz*, a North Dakota case cited within *ANR Western Coal*, explained that there is an implied obligation to act as a reasonably prudent operator so long as "there is no express clause in the lease relieving the lessee of this implied duty." 345 N.W.2d 33, 38 (N.D. 1984). Here, the Subject Leases expressly rejected the implied covenant of reasonable development, stating the "Lessor agrees that Lessee shall not be obligated . . . to commence or continue any operations during the primary term." *E.g.*, Appellants' App. at 9, ¶ 2.

Based on North Dakota law and the lack of any fiduciary duties expressed in the Agreement, Hess did not owe Pitchblack and Whitetail any fiduciary duty to extend or renew the Subject Leases. Therefore, Pitchblack and Whitetail's argument

that the Top Leases were extensions or renewals of the Subject Leases based on a fiduciary duty fails.

### B. *Materially Different Lease Terms*

In the absence of a fiduciary duty, Pitchblack and Whitetail must show that the Top Leases are extensions or renewals of the Subject Leases based on the terms of the Agreement. Here, the Agreement provided that the overriding royalty would attach to "any extensions or renewals thereof entered into within 180 days of expiration of the applicable Lease." Appellant's Add. at 14. Consequently, we must examine the meaning of "extensions or renewals" in order to determine whether the Top Leases fall within this clause.

Under North Dakota law, when the language of a contract is unambiguous, "[t]he parties' intent is ascertained from the writing alone if possible."[5] *Hallin v. Inland Oil & Gas Corp.*, 903 N.W.2d 61, 64 (N.D. 2017). The words in a contract should be given their ordinary meaning, "unless used by the parties in a technical sense, or unless a special meaning is given to them by usage." N.D. Cent. Code § 9-07-09. As Pitchblack and Whitetail point out, the purpose of an extension or renewal clause, "or anti-wash provision, in a royalty assignment is to protect the interests of the holder of an overriding royalty on the property." *Avatar Expl., Inc. v. Chevron, USA, Inc.*, 933 F.2d 314, 319 (5th Cir. 1991). "These clauses are for the purpose of extending the overriding royalty interest to new leases obtained on the same property by the same lessee." *Id.*

---

[5]Pitchblack and Whitetail also attempt to use certain extrinsic evidence, such as an Affidavit of Area of Mutual Interest Provision with TRZ and an Acknowledgment of Encumbrance in a different lease by Hess, to help explain the meaning of "extensions or renewals." However, neither party contends that the Agreement was ambiguous, and North Dakota law clearly states that "[w]hen an agreement has been memorialized in a clear and unambiguous writing, extrinsic evidence should not be considered to ascertain intent." *Hallin*, 903 N.W.2d at 64.

A renewal is "[t]he re-creation of a legal relationship or the replacement of an old contract with a new contract, as opposed to the mere extension of a previous relationship or contract." *Renewal*, Black's Law Dictionary (11th ed. 2019). An extension means "[t]he continuation of the same contract for a specified period." *Extension*, Black's Law Dictionary (11th ed. 2019). As the district court pointed out, both of these definitions "delineate[] a different degree of difference from the original." *Pitchblack Oil, LLC v. Hess Bakken Invs. II, LLC*, No. 1:16-cv-349, 2018 WL 1189879, at *6 (D.N.D. Mar. 7, 2018). North Dakota case law provides the insight needed to properly characterize the leases at issue.

Pitchblack and Whitetail argue North Dakota has already definitively decided when a Top Lease constitutes an extension or renewal. They argue that *Sandvick v. LaCrosse* held that all top leases are effectively extensions or renewals of the original leases. *See* 747 N.W.2d 519 (N.D. 2008).

*Sandvick* addressed whether certain parties who had jointly purchased several oil and gas leases had by doing so entered a joint venture. *Id.* at 520–21. The court concluded that the parties did create a joint venture relationship and consequently created certain fiduciary duties. *Id.* at 523. In determining whether some parties to the joint venture breached a fiduciary duty by excluding the other parties from purchasing certain top leases, the Supreme Court of North Dakota, in dicta, explained that the top leases were extensions of the original leases. *Id.* at 524. The court referenced *Petex*, finding "a substantially identical top lease taken while the initial lease was still in effect to be an extension and renewal of the initial lease." *Id.* (citing *Petex*, 1 P.3d at 920–21).

*Sandvick*, however, is distinguishable. *Sandvick* considered whether a particular joint venture triggered heightened duties. It did not involve an extension or renewal clause and did not concern overriding royalty interests. *Cf. Lillibridge v. Mesa Petroleum Co.*, 907 F.2d 1031, 1034 (10th Cir. 1990) (distinguishing itself from

-9-

*Howell v. Coop. Refinery Ass'n*, 271 P.2d 271 (Kan. 1954), because *Howell* "predicated its decision upon the existence of a confidential business relationship," creating a fiduciary duty). Even more, *Sandvick* still requires that the two leases be "substantially identical." 747 N.W.2d at 524. Picking up on this language, Pitchblack and Whitetail argue that the only terms that matter in comparing the two leases are the duration, the land, and the lessee/lessor names because *Sandvick* mentions those terms. *Id.* at 523–24. Notably, however, *Sandvick* does not limit the comparison of leases to those three terms. In fact, most case law suggests that courts should compare several other important terms as well.

In arguing that the Top Leases are materially different from the Subject Leases, Hess relies on *Lillibridge*, which also involved a dispute as to whether an overriding royalty burdened a top lease. *See* 907 F.2d 1031. The Tenth Circuit held that later leases were new and distinct, not extension or renewals. *Id.* at 1036. It noted that the 1982 leases were materially different from the 1972 lease for the following reasons: "[T]hree-year rather than ten-year primary term, five leases covering 160 acres each compared to one 800-acre lease, and a landowners' royalty of three-sixteenths instead of one-eighth. . . . [and] new consideration in the amount of $130,200 for the 1982 leases." *Id.* at 1033. The court further explained that there was no extension or renewal because there was no fiduciary relationship between the parties and no allegation of fraud or collusion. *Id.* at 1036.

Additionally, in *Sawyer*, the United States District Court for the District of Wyoming concluded that a top lease was new and distinct because the previous lease expired two months before the execution of the new lease, the new leases covered only shallow gas, the leases had different acreage, the leases increased the land royalty, the leases contained different clauses, and the leases reduced the primary term. 215 F. Supp. 2d at 1264 n.5, 1265. And, in *Sunac Petroleum Corp. v. Parkes*, the Supreme Court of Texas explained that a new lease was not an extension because it "was executed under different circumstances, for a new consideration, upon

different terms, and over a year after the expiration of the old lease." 416 S.W.2d 798, 803 (Tex. 1967).

Similar to these cases, the Subject Leases and Top Leases also contain material differences. First, every Top Lease has a different primary term than the corresponding Subject Lease, which *Lilibridge*, *Sawyer*, and *Sunac Petroleum* all considered to be an important difference. Further, *Sandvick*, the case that Pitchblack and Whitetail rely on, noted that it was important that the "leases had the same duration." 747 N.W.2d at 524. In addition, all of the Top Leases contained higher royalty amounts, which both *Lilibridge* and *Sawyer* noted as an important difference. For example, the Larsen Top Leases contained a five percent increase in royalty, showing that the Top Leases must have been negotiated to obtain a higher royalty. Along with increased royalties, the Top Leases also provided additional consideration. Again, *Lilibridge* and *Sunac Petroleum* also pointed to additional consideration as an important difference.

Some of the Top Leases also contained different lessors and different tracts of land, and even *Sandvick* mentioned acreage and lessor/lessee names as important differences. *Id.* In addition, because of changing ownership during the Subject Leases' terms, the lessee in every Top Lease changed from RME in the Subject Leases to either LoneTree or TRZ in the Top Leases. Finally, every Top Lease contained new clauses, such as Pugh Clauses, Mother Hubbard Clauses, or Shut-in Provisions, providing even more evidence that the Top Leases were separate and distinct from the Subject Leases. It is worth noting that all of the Top Leases except one were entered into before the expiration of the Subject Leases, which is one factor in favor of Pitchblack and Whitetail. However, the leases in *Lilibridge* also were executed before the expiration of the subject leases, and the material differences of the leases in this case outweigh the significance of the timing of the leases.

-11-

Based on these material differences, it is apparent that the district court correctly concluded that the Top Leases were not extensions or renewals of the Subject Leases. Because the Top Leases were new leases, the extension or renewal clause did not attach the overriding royalty interests to the Top Leases. Therefore, the Top Leases were not burdened by the overriding royalty interests.

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____